**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **RIAD GHOSHEH** | **Civil Action No. 2:19-cv- 02710** |
| Plaintiff, | **Judge Mark S. Norris** |
| v. | **Magistrate Tu M. Pham** |
| **PHH MORTGAGE CORPORATION d.b.a. PHH MORTGAGE SERVICES, *et al.*** | **PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES AGAINST DEFENDANTS PHH MORTGAGE CORPORATION AND THE WILSON LAW GROUP** |
| Defendant. | |
| | **TRIAL BY JURY DEMANDED** |

Plaintiff Riad Ghosheh, through counsel, states as follows for his FIRST AMENDED

COMPLAINT against Defendant PHH Mortgage Corporation d.b.a. PHH Mortgage Services and

Defendant The Wilson Law Group states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Riad Ghosheh ("Plaintiff" or "Ghosheh") is the legal owner of the real property

located at and commonly known as 9201 Loganberry Lane, Cordova, TN 38016 (the "Home").

2.      Ghosheh is legally deaf and partially blind.

3.      Ghosheh currently maintains the Home as their primary, principal residence, and

has maintained the Home as such at all times relevant to this Complaint.

4.      Ocwen Loan Servicing LLC ("Ocwen")  serviced a Note (the "Note") and a Deed

of Trust on the Home securing the Note (the "Deed of Trust"), each executed by Ghosheh

(collectively, the "Loan"), at all times relevant to this Complaint until servicing rights to the loan

transferred to   Defendant   PHH   Mortgage   Corporation   d.b.a.   PHH   Mortgage   Services

("Defendant" or "PHH") as a result of a Ocwen merging into PHH .

5.      PHH is the current servicer of the Loan and became a debt collector on this Loan as since acquiring servicing rights to the Loan as part of their merger with Ocwen.

6.      Ocwen and PHH acted as a servicer and debt collector for the owner of the Loan at all times relevant to this complaint.

7.      The Wilson Law Group ("Wilson") is a foreign professional services legal liability company headquartered in Little Rock, AR. Wilson operates in Tennessee as Wilson & Associates PLLC.

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA) and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692k(d), *et seq*.

9.      This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

10.      This Court has personal jurisdiction over PHH as PHH conducts business all across the United States including the servicing of the Loan in Shelby County, Tennessee, within this Judicial District.

11.      This Court has personal jurisdiction over actions committed by Ocwen, for which PHH is responsible pursuant to their status as the surviving entity following their merger with Ocwen, as Ocwen conducted business in the State of Tennessee until its cancellation of registration due to said merger on August 6, 2019.

12.      This action is filed primarily to enforce regulations promulgated by the Consumer

Finance Protection Bureau (CFPB) and implemented pursuant to section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.41 of Regulation X.

13.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Ghosheh maintains the Home as his primary residence within this District.

## **INTRODUCTION**

14.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

15.     Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

16.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

17.     Ocwen is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

18.     PHH is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

19.     Ghosheh has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches which provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

20.     Ghosheh asserts a claim for relief against PHH for violating 12 U.S.C. § 2605(k)(1)(E) for breaches of 12 C.F.R. § 1024.41 under Regulation X as set forth, *infra*.

21.     Ghosheh is a "consumer", as that term is defined by 15 U.S.C. § 1692a(3), and a person affected by a violation of the FDCPA, and other violations, with standing to bring this claim under 15 U.S.C. § 1692.

22.     PHH is a "debt collector" as defined by 15 U.S.C. § 1692a(6) as PHH began collecting on the Loan when the Loan was in default.

23.     Wilson is a debt collector as that term is defined by 15 U.S.C. 13692a(6) based upon the actions described herein, *supra*, as all times relevant herein Wilson is seeking to collect a debt on behalf of PHH.

24.     Plaintiff's interactions with both Defendants are a "debt" as that term is defined by the FDCPA as the underlying debt sought to be collected was a student loan the primary purpose of which was for personal, family, or household use.  In this case the debt was a residential mortgage for Plaintiff's Home.

25.     Plaintiff has a private right of action under the FDCPA against Wilson pursuant to 15 U.S.C. § 1692k(d) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## FACTUAL BACKGROUND

### (Default and Loan Modification)

26.     Ghosheh traveled on extended vacation to Israel to attend to family business and left the Home in the care of their son whom he made responsible for remitting payments on the Loan. Unbeknownst to Ghosheh, their son failed to make payments and the Loan fell into

default.

27.     On or about June 3, 2019, Ghosheh filed a voluntary petition seeking relief under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Tennessee in the matter assigned Petition No. 19-24223 (the "Bankruptcy") in an attempt to save the property.

28.     In the interim, on or about June 3, 2019, Ocwen sent Ghosheh a proposed "Streamline Modification Trial Period Plan" offer (the "TPP"). *A copy of the TPP and the accompanying correspondence is attached as **Exhibit 1**.*

29.     Plaintiff executed the TPP on June 18, 2019 and returned it to Ocwen on or about the same day. *See Exhibit 1.*

30.     Reasonably believing that the TPP would allow Ghosheh to remain in the Home, which was the primary purpose of filing the Bankruptcy, Ghosheh allowed the Bankruptcy to be dismissed on or about July 17, 2019.

31.     Ghosheh timely and dutifully made the payments required under the TPP. *A receipt and shipping information for the payment due July 1, 2019 (the "July Payment") are attached as **Exhibit 2**; a receipt and shipping information for the payment due August 1, 2019 (the "August Payment") are attached as **Exhibit 3**; and, a receipt and shipping information for the payment due September 1, 2019 (the "September Payment") are attached as **Exhibit 4**.*

32.     The July Payment of $1,418.15 was remitted to Ocwen, as instructed in the TPP, by payment dated June 24, 2019 which was received by Ocwen on June 28, 2019. *See Exhibit 2.*

33.     The August Payment of $1,418.15 was remitted to Ocwen, as instructed in the TPP, by payment dated June 24, 2019 which was received by Ocwen on July 31, 2019. *See*

*Exhibit 3.*

34.     The September Payment of $1,418.15 was remitted to Ocwen, as instructed in the TPP, by payment dated August 26, 2019 which was received by Ocwen on August 27, 2019. *See Exhibit 4.*

35.     Due to the merger of Ocwen and PHH, servicing rights to the Loan transferred from Ocwen to PHH at some point during the three (3) month duration of the TPP.

36.     The three (3) payments Ghosheh remitted to Ocwen all met different fates:

> a.  Ocwen kept the funds for the July Payment, but never credited the same to the Loan;
>
> b.  PHH returned the funds for the payment due August 1, 2019 to Ghosheh by letter dated September 22, 2019; and,
>
> c.  The funds for the payment due September 1, 2019 are missing in action.

*A copy of a mortgage statement from PHH through NewRez dated September 16, 2019, evidencing only one payment in the amount of $1,418.15 was paid on the Loan year to date is attached as* **Exhibit 5**.

37.     After receiving the September 22, 2019 Letter which compounded the concerns that Ghosheh had with the failure to credit the July Payment and the failure to accept the August payment, Ghosheh through his power of attorney, Michael Mason, reached back out to Ghosheh's bankruptcy attorney who advised PHH advertised that a sale of the Home was scheduled to occur on November 1, 2019.

38.     Both Ghosheh and Mason were shocked to learn of the November 1, 2019 sale because neither Ocwen nor PHH ever sent a notice of the sale to Ghosheh either directly or

through their counsel.

39.     On or about October 11, 2019 Wilson, on behalf of PHH, caused to be published the Notice of Trustee's Sale in the Memphis Daily News. *A copy of this Notice is attached as Exhibit 8 to the Complaint*.

40.     Exhibit 8 has been published again on October 18, 2019 and October 25, 2019 despite the Plaintiff's original complaint being filed.

## IMPACT UPON AND DAMAGE TO PLAINTIFF

41.     Despite Ghosheh's timely payments on the TPP, PHH has initiated the process to foreclose upon the Loan and sell Ghosheh's Home in violation of  RESPA and the regulations promulgated thereunder.

42.     Ghosheh lives in daily fear that as of November 1, 2019 he will be homeless, despite his diligent compliance with and remittal of payments pursuant to the TPP.

43.     Ghosheh has been forced to retain counsel to bring this action.

44.     Both Ocwen and PHH's improper actions have also caused Plaintiff to suffer other damages including, but not limited to:

    a.   Severe emotional distress driven by the impending loss of his Home and the loss of over Seventy Five Thousand Dollars ($75,000.00) of equity in his Home and by the fear that he will be imminently evicted from his Home, which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant harm;

    b.   Severe emotional distress driven by the reality that a sale of his home has been scheduled despite meeting all of the terms and conditions of the TPP;

    c.   The loss of at least $1,418.15 from the September Payment that has not been applied to the Loan or returned to Ghosheh;

    d.   Being caused to unnecessarily remain in a default or delinquent status on the Loan and remain in foreclosure for a significantly longer time than he would have had Ocwen and PHH properly handled the TPP and Ghosheh's payments thereunder; and,

    e.   An unnecessary delay in the rehabilitation of Ghosheh's credit that he could have begun upon the receipt of a permanent modification following his completion of the TPP.

45.    Throughout this entire ordeal, Ghosheh has merely wanted to have PHH honor the terms of the TPP and have the benefit of the permanent modification to which he was entitled after his compliance with the terms of the Modification.

## ADDITIONAL EVIDENCE OF A PATTERN AND PRACTICE OF VIOLATIONS OF REGULATION X COMMITTED BY OCWEN AND PHH

46.    The actions of Ocwen and PHH are part of a pattern and practice of behavior in violation of Gosheh's rights and in abdication and contravention of Ocwen's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

47.    PHH took over servicing of the Loan from Ocwen as a result of Ocwen's parent company, Ocwen Financial Corporation, purchasing PHH Mortgage Corporation in 2018, a sale which was completed on October 4, 2018.[1]

48.    This purchase of PHH was necessitated in large part by various litigation and

---

[1] See http://www.ocwen.com/PHHAnnouncement (last visited August 9, 2019)

consent orders involving Ocwen's RealServicing System.[2]

49.     At the time of the filing of this Complaint, Ocwen has had at least Eleven Thousand (11,000) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgage products and at least Two Hundred Forty Two (242) such complaints identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account". Each such complaint is filed and cataloged in the CFPB's publicly accessible online database, which is located at: http://www.consume rfinance.gov/complaintdatabase/.

---

[2] See Ocwen Financial 10-Q filed August 7, 2019 at p. 53 ("*New York Department of Financial Services.* In March 2017, we entered into a consent order with the NY DFS (the 2017 NY Consent Order) that provided for the termination of the engagement of a monitor appointed pursuant to an earlier 2014 consent order and for us to address certain concerns raised by the NY DFS that primarily relate to our servicing operations, as well as for us to comply with certain reporting and other obligations. In addition, in connection with the NY DFS' approval in September 2018, of our acquisition of PHH, we agreed to satisfy certain post-closing requirements, including reporting obligations and record retention and other requirements relating to the transfer of loans collateralized by New York property (New York loans) onto Black Knight MSP and certain requirements with respect to the evaluation and supervision of management of both Ocwen Financial Corporation and PHH Mortgage Corporation. In addition, we are prohibited from boarding any additional loans onto the current REALServicing system and we were required to transfer all New York loans off the REALServicing system by April 30, 2020. The conditional approval also modified a preexisting restriction on our ability to acquire MSRs such that the restriction applies only to New York loans and, with respect to New York loans, provides that Ocwen may not increase its aggregate portfolio of New York loans serviced or subserviced by Ocwen by more than 2% per year (based on the unpaid principal balance of loans serviced at the prior calendar year-end). This restriction will remain in place until the NY DFS determines that all loans serviced on the REALServicing system have been successfully migrated to Black Knight MSP and that Ocwen has developed a satisfactory infrastructure to board sizable portfolios of MSRs. We continue to work with the NY DFS to address matters they continue to raise with us as well as to fulfill our commitments under the 2017 NY Consent Order and PHH acquisition conditional approval. To the extent that we fail to address adequately any concerns raised by the NY DFS or fail to fulfill our commitments to the NY DFS, the NY DFS could take regulatory action against us, including imposing fines or penalties or otherwise restricting our business activities. Any such actions could have a material adverse impact on our business, financial condition liquidity and results of operations."

50.     Ghosheh has reviewed the CFPB's consumer complaint database and has identified fifteen (15) complaints from other borrowers alleging RESPA violations by Ocwen which evidence conduct demonstrating that Ocwen has engaged in a pattern and practice of violating RESPA with respect to other borrowers. *The aforementioned consumer complaints are attached as Exhibit 6 with the date, details, and a narrative disclosed by each consumer set forth in each complaint.*

51.     At the time of the filing of this Complaint, PHH has had at least Seven Hundred Eighty One (781) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" concerning mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaint database/)

52.     Ghosheh has reviewed the CFPB's consumer complaint database and has identified fifteen (15) complaints from other borrowers alleging RESPA violations by PHH which evidence conduct demonstrating that PHH has engaged in a pattern and practice of violating RESPA with respect to other borrowers. *The aforementioned consumer complaints are attached as Exhibit 7 with the date, details, and a narrative disclosed by each consumer set forth in each complaint.*

### COUNT ONE: VIOLATION OF 12 C.F.R. § 1024.41(f)

53.     Ghosheh restates and incorporates his statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten.

54.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the

provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

55.     12 C.F.R. § 1024.41(f)(1) provides:

A servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:
    (i)   A borrower's mortgage loan obligation is more than 120 days delinquent;
    (ii)  The foreclosure is based on a borrower's violation of a due-on-sale clause; or
    (iii) The servicer is joining the foreclosure action of a superior or subordinate lienholder.

56.     Ocwen offered and Ghosheh accepted the TPP. *See Exhibit 1.*

57.     Ghosheh timely remitted all payments due and owing under the terms of the TPP. *See Exhibits 2, 3, and 4.*

58.     As Ghosheh was timely remitting payments under the TPP, Ghosheh's mortgage loan obligation was not more than 120 days delinquent. *See Exhibits 1, 2, 3, and 4.*

59.     At the time Ocwen offered the TPP and Ghosheh accepted of the same, there was no foreclosure sale of the Home scheduled or advertised.

60.     PHH advertised that the sale of the Home was to occur on November 1, 2019 while Ghosheh had been dutifully on the TPP.

61.     PHH's advertisement of the sale of the Home was the first notice required by applicable law for the non-judicial foreclosure process regarding the Loan.

62.     PHH's actions, in advertising the sale of the Home when Ghosheh was not more than 120 days delinquent on his obligations under the Loan, constitutes a clear and egregious violation of 12 C.F.R. § 1024.41(f)(1).

63.     Alternatively, if Ghosheh was deemed to be more than 120 days delinquent on his obligations under the Loan, then PHH's actions otherwise constitute a violation of 12 C.F.R. §

1024.41(f)(2), as described, *infra*.

64.     12 C.F.R. § 1024.41(f)(2) provides:

> If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:
>
> (i)    The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (ii)   The borrower rejects all loss mitigation options offered by the servicer; or
>
> (iii)  The borrower fails to perform under an agreement on a loss mitigation option.

65.     The Official Comment to 12 C.F.R. § 1024.41(b)(3) states, in part: If no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale.

66.     Ocwen's offer of the TPP constituted a loss mitigation application under 12 C.F.R. § 1024.41.[3,4] *See Exhibit 1.*

---

[3] The Official Comment to 12 C.F.R. § 1024.41(b) states, in part: "*When an inquiry or prequalification request becomes an application.* A servicer is encouraged to provide borrowers with information about loss mitigation programs. If in giving information to the borrower, the borrower expresses an interest in applying for a loss mitigation option and provides information the servicer would evaluate in connection with a loss mitigation application, the borrower's inquiry or prequalification request has become a loss mitigation application. *A loss mitigation application is considered expansively and includes any "prequalification" for a loss mitigation option.* For example, if a borrower requests that a servicer determine if the borrower is "prequalified" for a loss mitigation program by evaluating the borrower against preliminary criteria to determine eligibility for a loss mitigation option, the request constitutes a loss mitigation application." (Emphasis added).

[4] See *Necak v. Select Portfolio Servicing, Inc.*, 2019 U.S. Dist. LEXIS 71147, *17-18, 2019 WL 1877174 ("Mrs. Necak was prequalified by SPS for a Streamline Trial Plan pursuant to HAMP in 2016; contacted and informed SPS that she was interested in the program; and, made all three required trial payments. Mrs. Necak's prequalification

67.     Ghosheh accepted the offer and timely remitted all payments due and owing under the terms of the TPP. *See Exhibits 2, 3, and 4.*

68.     At the time of Ocwen's prequalification through the offer of the TPP and Ghosheh's subsequent acceptance of the same, there was no foreclosure sale of the Home scheduled.

69.     PHH's advertisement of the sale of the Home was the first notice required by applicable law for the non-judicial foreclosure process regarding the Loan.

70.     PHH did not sent any notice pursuant to 12 C.F.R. § 1024.41(c)(1)(ii) stating that Ghosheh was not eligible for any loss mitigation option prior to advertising the November 1, 2019 sale.

71.     Ghosheh did not reject any loss mitigation options nor fail to perform on the TPP at any time prior to PHH advertising the November 1, 2019 sale.

72.     PHH's actions, in advertising the sale of the Home when none of the requirements of 12 C.F.R. §§ 1024.41(f)(2)(i)-(iii) had been satisfied, constitutes a clear and egregious violation of 12 C.F.R. § 1024.41(f)(2).

73.     Regardless of the theory of liability, PHH's actions in violation of 12 C.F.R. § 1024.41(f) are part of a pattern and practice of behavior in conscious disregard for Ghosheh's rights.

74.     As a result of PHH's actions, PHH is liable to Ghosheh for actual damages, as further described, *supra*, and statutory damages. 12 U.S.C. § 2605(f)(1).

75.     Additionally, Ghosheh requests reasonable attorneys' fees and costs incurred in

---

constituted a loss mitigation application, thereby triggering certain provisions of RESPA that require a servicer to exercise 'reasonable diligence' in reviewing an application and, if the loss mitigation application is not complete, to give the borrower a 'reasonable time' within which to submit any required information.")

connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO: BREACH OF CONTRACT

76.    Ghosheh restates and incorporates his statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten.

77.    The Loan and the TPP are each a contract between Ghosheh and PHH. *See Exhibit 1*.

78.    Ocwen offered the TPP to Ghosheh and Ghosheh timely and properly accepted the TPP. *See Exhibit 1*.

79.    Ghosheh dutifully performed their obligations pursuant to the TPP by timely remitting each and every payment due thereunder and by otherwise substantively meeting each and every obligation imposed by the TPP. *See Exhibits 1, 2, 3, and 4*.

80.    PHH breached the TPP by refusing to honor the TPP and failing to properly accept and apply payments Ghosheh remitted to Ocwen.

81.    In addition to this explicit breach of the contract, PHH also violated the covenant of good faith and fair dealing inherent in every contract.

82.    The purpose of the covenant of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed upon expectations of the parties in their performance.

83.    PHH breached this duty by failing to honor the terms of the TPP and refusing to accept and properly apply payments remitted by Ghosheh.

84.    PHH acted in bad faith, dishonestly, and with an improper motive to injure the rights of Ghosheh.

85.     As pled, *supra*, Ghosheh has been harmed by, and continues to suffer from harm resulting from, PHH's breach of the TPP which has thwarted Ghosheh's ability to secure a permanent loan modification as well as legal fees and expenses to retain counsel to prepare and file this Complaint to remedy PHH's wrongful conduct.

86.     As a result of PHH's actions, PHH is liable to Ghosheh for actual damages as further described, *supra*.

### COUNT THREE: PROMISSORY ESTOPPEL

87.     Ghosheh restates and incorporates his statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten.

88.     The doctrine of promissory estoppel requires: (1) That the defendant made a promise; (2) that the promise was unambiguous and not unenforceable vague; and, (3) that the plaintiff reasonably relied upon such promise to their detriment.

89.     PHH promised that Ghosheh would receive a permanent modification upon acceptance and satisfaction of the terms of the TPP. *See Exhibit 1*.

90.     As the TPP would put Ghosheh on a path to avoiding a foreclosure sale of the Home and subsequent eviction, and as Ghosheh had already filed the Bankruptcy in an attempt to stop the same, PHH should have expected that Pautler would rely on the promise of the DIL.

91.     Ghosheh reasonably and in good faith relied on said promise in such a manner as to change his position for the worse as he remitted and lost the use of funds for three (3) payments each in the amount of $1,418.15 and allowed the Bankruptcy to be dismissed based upon the reasonable expectation of receiving a permanent modification upon the completion of the TPP.

92.     Ghosheh was harmed by his reliance on the TPP as he lost the benefit which he expected in the form of a modification and is at serious risk of imminently losing his Home.

93.     As a result of PHH's actions, PHH is liable to Ghosheh for actual damages as further described, *supra*.

### COUNT FOUR: CONVERSION

94.     Ghosheh restates and incorporates his statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten.

95.     Ghosheh remitted the September Payment to Ocwen on or about August 26, 2019 with an expected delivery date of August 28, 2019. *See Exhibit 4*.

96.     Ocwen and PHH accepted and retained the funds from the September Payment.

97.     Neither Ocwen nor PHH applied the September Payment to the Loan in accordance with the terms of the TPP or otherwise. *See Exhibit 5*.

98.     When Ghosheh sent the September payment to Ocwen, Ocwen and PHH had a duty to keep the payment intact for application of payments toward the TPP.  Neither the TPP, the Note, nor TPP allowed for Ocwen and PHH to partially apply the September payment to other outstanding balances due on the Loan.

99.     PHH's conversion of Ghosheh's funds has caused him to suffer the loss of his personal property, specifically $1,418.15 from the September Payment and the out-of-pocket damage of having to retain counsel to remedy this situation.

100.     As pled, *supra*, Ghosheh has been harmed by, and continues to suffer from harm from PHH's conversion as they lost the use of the funds form the September Payment without receiving the expected and intended benefit of such payment in the form of a permanent

modification.

101.     In addition, PHH's intentional and outrageous conduct has caused Ghosheh to suffer extreme emotional distress driven by the reasonable and legitimate fear that his Home will be sold at sale on November 1, 2019, despite his compliance with the TPP, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

102.     As a result of PHH's conversion, PHH is liable to Plaintiffs for actual damages as further described, *supra* as well as an award, as applicable for compensatory damages and punitive damages.

**COUNT FIVE: UNJUST ENRICHMENT**

103.     Ghosheh restates and incorporates his statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten.

104.     Ghosheh conferred a benefit, the September Payment, on Ocwen and PHH, each of which had knowledge of that benefit. *See Exhibit 4*.

105.     Ocwen and PHH voluntarily accepted and retained the benefit conferred.

106.     The circumstances render the retention of said benefit by Ocwen and PHH inequitable as Ghosheh did not receive the value of the benefit, that is, having the September Payment applied to the Loan in compliance with the TPP or otherwise. *See Exhibit 5*.

107.     PHH has been unjustly enriched at Ghosheh's direct expense in the amount of at least $1,418.15 from the September Payment. *See Exhibit 4 and 5*.

108.    As a result of PHH's unjust enrichment, PHH is liable to Ghosheh for actual damages as further described, *supra*, including disgorgement of all monies unlawfully accepted by Ocwen and PHH from Ghosheh.

### COUNT SIX:  VIOLATIONS OF THE FDCPA, 15 U.S.C. §§ 1692, *et seq.* - PHH

109.    Ghosheh restates and incorporates his statements and allegations contained in paragraphs 1 through 52 in their entirety, as if fully rewritten..

110.    Ghosheh is a "consumer" as he is a natural person residing in Shelby County, TN and is obligated or allegedly obligated to pay on the Loan sought to be collected by PHH. 15 U.S.C. § 1692a(3).

111.    The Loan is a "debt" as Ghosheh obtained the Loan and became obligated thereunder for personal, household, or family use. 15 U.S.C. § 1692a(5)

112.    PHH is a "debt collector" as defined by the FDCPA as PHH began servicing the Loan at a time when the Loan was in default. 15 U.S.C. § 1692a(6)

113.    As outlined above, *supra*, PHH violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect a debt by: (a) Refusing the honor the terms of the TPP which Ghosheh dutifully accepted and performed under; (b) refusing to properly apply the September 2019 payment to the Loan in accordance with the terms of the TPP or otherwise; and (c) failing to take any reasonable steps to notify Ghosheh of the November 1, 2019 Foreclosure Sale.

114.    The actions described, *supra*, are also each acts in which PHH violated 15 U.S.C. § 1692e(2).

115.    Due to PHH's conduct, Ghosheh suffered actual damages, further described, *supra*, including but not limited to, the loss of the opportunity to obtain a permanent modification upon completion of the TPP as well as legal fees and expenses to retain counsel to prepare and file this Complaint to remedy PHH's wrongful conduct.

116.    PHH's actions have directly and proximately caused Ghosheh to suffer from extreme emotional distress driven by the reasonable and legitimate fear that his Home will be sold at sale on November 1, 2019, despite his compliance with the TPP, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

117.    As a result of the actions of PHH, Defendant PHH is liable to Ghosheh for actual damages as further described, *supra*, statutory damages, and reasonable attorneys' fees and costs.

### COUNT SEVEN: VIOLATIONS OF THE FDCPA, 15 U.S.C. §§ 1692, *et seq.* - WILSON

118.    The Plaintiff restates and alleges the allegations contained in Paragraphs 1 through 40 as if fully restated herein.

119.    The Plaintiff is a "consumer" as that term is defined by the FDCPA.

120.    Wilson is a debt collector as that term is defined by 15 U.S.C. 13692a(6) based upon the actions described herein, *supra*, as all times relevant herein Wilson is seeking to collect a debt on behalf of PHH.

121.    Plaintiff's interactions with both Defendants are a "debt" as that term is defined by the FDCPA as the underlying debt sought to be collected was a student loan the primary purpose of which was for personal, family, or household use.  In this case the debt was a residential mortgage for Plaintiff's Home.

122.    Based on the allegations herein, *supra*, Wilson violated 15 U.S.C. § 1692e(5) by attempting to take action that could not legally be taken - filing the Notice of Sale when the foreclosure should have been stayed pursuant to 12 C.F.R. 1024.41(f).

123.    Wilson violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect a debt by continuing to reset the sale on October 18, 2019 and October 25, 2019 despite its client's knowledge of this lawsuit.

124.    Wilson's actions have directly and proximately caused the Plaintiff to incur time in having to deal with this Notice of Sale and now having to file this Amended Complaint, Motion for Temporary Restraining Order and Motion for Preliminary Injunction.

125.    As a result of the actions of Wilson, Wilson is liable to the Plaintiff for actual damages in an amount to be determined, statutory damages of $1,000.00, and Plaintiff's attorney's fees and costs pursuant to 15 U.S.C. 1692k(a).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Riad Ghosheh respectfully requests that this Court  grant judgment in their favor against Defendant PHH Mortgage Corporation d.b.a. PHH Mortgage Services and the Wilson Law Group as follows:

A)      A finding that PHH violated 12 C.F.R. § 1024.41(f) as alleged in Count One;

B)      A finding that PHH committed violations of 15 U.S.C. § 1692(e)(2) and/or 15 U.S.C. § 1692(f) as alleged in Count Six;

C)      For an award of actual damages in an amount to be determined at trial against PHH as to Counts One through Six;

D)      For an award of actual damages in an amount to be determined at trial against Wilson as to Count Seven;

E)      For an award of statutory damages against PHH in the amount of Two Thousand Dollars ($2,000.00) for each and every separate violation of RESPA alleged in Count One;

F)      For an award of statutory damages against PHH in the amount of One Thousand Dollars ($1,000.00) for violating the FDCPA as alleged in Count Six;

G)      For an award of statutory damages against Wilson in the amount of One Thousand Dollars ($1,000.00) for violations the FDCPA as alleged in Count Seven;

H)      For an award of compensatory damages, as applicable, in an amount to be determined at trial for the allegations contained in Count Four;

I)      For an award of punitive damages, as applicable, in an amount to be determined at trial for the allegations contained in Count Four;

J)      For an award of reasonable attorneys' fees and costs from PHH as alleged in Counts One and Six against PHH;

K)      For an award of reasonable attorneys' fees and costs from Wilson as alleged in Count Seven; and

L)      For all other relief this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Riad Ghosheh demands a jury trial on all causes of action and claims with respect to which they have a right to a jury trial.

Dated: October 28, 2019                    Respectfully submitted,

                                           /s/Brian D. Flick, Esq.
                                           Brian D. Flick (OH #0081605)
                                           DannLaw

P.O. Box 6031040
Cleveland, OH 44103
Ph. (216)373-0539
F. (216)373-0536
notices@dannlaw.com

Sara Annell Rogers, TN Bar No. 027921
P.O. Box 5545
West Memphis, AR 72303-5545
(870) 732-8787
sararogers@sararogerslawfirm.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 29, 2019 a copy of the foregoing *Plaintiff's First Amended Complaint and Exhibits 1 through 8* was sent via priority Mail prepaid to the following parties:

PHH MORTGAGE CORPORATION
d.b.a. PHH MORTGAGE SERVICES
c/o Corporation Service Company
2908 Poston Avenue
Nashville, TN 37203-1312

/s/Brian D. Flick, Esq.
Brian D. Flick (OH #0081605)
DannLaw
Co-*Counsel for Plaintiff*